117 N.J. Super. 304 (1971)
284 A.2d 543
COUNTY OF BERGEN, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DEPARTMENT OF PUBLIC UTILITIES OF THE STATE OF NEW JERSEY AND WILLIAM E. OZZARD, PRESIDENT OF THE BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENTS. COUNTY OF BERGEN, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DEPARTMENT OF PUBLIC UTILITIES OF THE STATE OF NEW JERSEY AND WILLIAM E. OZZARD, PRESIDENT OF THE BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 30, 1971.
Decided December 2, 1971.
*307 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Michael J. Ferrara, Bergen County Counsel for County of Bergen (Mr. James T. Murphy, Assistant Bergen County Counsel, of counsel).
Mr. George F. Kugler, Jr., Attorney General, attorney for Department of Public Utilities of the State of New Jersey, and William E. Ozzard, President of the Board of Public Utility Commissioners (Mr. Joseph W. Ferraro, Jr., Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by LANE, J.A.D.
These appeals are before us upon leave granted in each case.
Plaintiff Bergen County appeals from a determination by the Board of Public Utility Commissioners denying its motion to dismiss for lack of jurisdiction. Defendants Department *308 of Public Utilities and William E. Ozzard, president of the Board of Public Utility Commissioners, appeal from a Law Division order denying a motion by the Board to dissolve temporary restraints placed on the Board of Public Utility Commissioners.
Plaintiff operates sanitary land fill disposal sites in Teaneck and Lyndhurst, both located in Bergen County. The use of the disposal sites is limited to: Bergen County municipalities, private scavengers contracted by Bergen County municipalities, private scavengers contracted by Bergen County residents, and Bergen County residents.
On January 6, 1971 the Bergen County Board of Chosen Freeholders announced an increase in rates for the use of the County's disposal sites. On January 8, 1971 the Board of Public Utility Commissioners issued an order directing Bergen County to suspend its rate increase and to appear before the Board on January 21, 1971 to show cause why "such increase should not be permanently suspended or why said County of Bergen should not comply with the Board's Rule of Practice 14:6-16 before increased rates, for disposal of solid waste at the land fill sites in Bergen County, be permitted," and to show that the proposed increase was reasonable.
On January 21, 1971 plaintiff filed a complaint in the Law Division of the Superior Court seeking to restrain the Board from suspending the increased rates, from conducting the hearing on the reasonableness of the rates, and from ordering the County to show cause why the rates should not be permanently suspended or why the County should not comply with the Board's Rule of Practice 14:6-16 before the increase was permitted. On February 3, 1971 the Law Division issued an order temporarily restraining the suspension of the rate increase until the Board made findings of fact and conclusions of law on the jurisdictional issue and until all time for appeal had expired. Plaintiff was ordered to hold in escrow the amounts representing the increase in rates.
*309 A hearing was held on the jurisdictional issue and on February 10, 1971 the Board denied the plaintiff's motion. On February 26, 1971 plaintiff filed a motion for leave to appeal.
Subsequent to the Board's determination, defendants moved in the Law Division to dissolve the restraints. The motion was denied on March 10, 1971. On March 10 defendants filed a motion for leave to appeal.

A
By the enactment of the Solid Waste Management Act N.J.S.A. 13:1E-1 et seq., effective May 6, 1970; the Solid Waste Control Act, N.J.S.A. 48:13A-1 et seq., effective November 6, 1970; the County Solid Waste Disposal Financing Law N.J.S.A. 40:66A-31.1 et seq., effective October 28, 1970, and the Solid Waste Management Authorities Law, N.J.S.A. 40:66A-32 et seq., effective August 16, 1968, the Legislature has set forth a comprehensive scheme for dealing with the problems of solid waste collection and disposal.
The purpose of N.J.S.A. 48:13A-1 et seq. is to provide for an efficient and reasonable solid waste collection, disposal and utilization service by vesting in the Board of Public Utility Commissioners the duty to set forth and enforce standards and rates regulating the economic aspects of such service. N.J.S.A. 48:13A-2. The Board of Public Utility Commissioners is specifically directed to provide for the regulation of the rates of the solid waste industry. N.J.S.A. 48:13A-4.
The purpose of N.J.S.A. 40:66A-31.1 et seq. is to provide for the proper collection, treatment and disposal of solid waste and other refuse on a regional or multi-unit basis. N.J.S.A. 40:66A-31.2. To that end any county coming within the provisions of the act is empowered to "purchase, construct, improve, extend, enlarge or reconstruct garbage disposal facilities within such county either alone *310 or jointly with any municipality, joint meeting or incinerator authority located within such county * * *." N.J.S.A. 40:66A-31.4 (1). The county may operate, manage and control the solid waste facilities purchased or constructed to supply services to municipalities in accordance with applicable law, rules, regulations or orders. Id.
The powers of a county are restricted to those granted to it by statute. Bergen County v. Port of N.Y. Authority, 32 N.J. 303, 313 (1960). Statutory provisions concerning counties must be liberally construed. Essex County v. Hindenlang, 35 N.J. Super. 479, 486 (App. Div. 1955), app. dism. 24 N.J. 517 (1957); N.J. Const. (1947), Art. IV, § VII, par. 11; N.J.S.A. 40:23-5.6.
Plaintiff argues that its power to regulate the rates for the use of its land fill sites is established by N.J.S.A. 40:66A-31.8, which provides:
After the commencement of operation of solid waste disposal facilities, the county may prescribe and change from time to time rates or rentals to be charged for the use of the services of such facilities. Such rates or rentals being in the nature of use or service charges or annual rental charges, shall be uniform and equitable for the same type and class of use or service of such facilities. Such rates or rentals and types and classes of use and service may be based on such factors as the board of chosen freeholders of the county shall deem proper and equitable.
N.J.S.A. 40:66A-31.5 directs that no county may exercise any of the powers granted by N.J.S.A. 40:66A-31.1 et seq. without first having obtained approval of the State Commissioner of Environmental Protection. Plaintiff has not obtained such approval and therefore may not exercise any powers under N.J.S.A. 40:66A-31.8.
The County argues that it has substantially complied with N.J.S.A. 40:66A-31.5. Even if there had been such compliance and approval had been obtained from the State Commissioner of Environmental Protection, the position of the County would not be improved.
*311 The purpose of N.J.S.A. 40:66A-31.8 was to give authority to counties to charge users of solid waste disposal facilities. Without statutory authority a county would not be able to make such a charge. Cf. Moyant v. Paramus, 30 N.J. 528, 543 (1959); Lyon v. Elizabeth, 43 N.J.L. 158, 161 (Sup. Ct. 1881). By N.J.S.A. 48:13A-1 et seq., the Legislature vested in the Public Utility Commission regulatory authority over the rates established by a county where the county is acting as a public utility. There is no indication that the Legislature intended by N.J.S.A. 40:66A-31.8 to exempt counties acting as public utilities from the regulatory powers of the Public Utility Commission.

B
The County argues that it is not a "public utility" within the meaning of Title 48. Title 48 governs public utilities. N.J.S.A. 48:2-1 establishes the Department of Public Utilities and a Board of Public Utility Commissioners. N.J.S.A. 48:2-13 defines the general jurisdiction of the Board. It directs that the Board "shall have general supervision and regulation of and jurisdiction and control over all public utilities * * *." "Public utility" is defined in part as:
* * * every individual, co-partnership, association, corporation or joint stock company * * * that now or hereafter may own, operate, manage or control within this State any * * * solid waste collection, solid waste disposal * * * system, plant or equipment for public use, under privileges granted or hereafter to be granted by this State or by any political subdivision thereof.
N.J.S.A. 48:13A-4 directs that:
The Board of Public Utility Commissioners shall, after hearing, by order in writing, make appropriate rules, regulations and administrative orders for the regulation of rates and public utility aspects of the solid waste collection industry and the solid waste disposal industry. [Emphasis added.]
*312 The Board of Public Utility Commissioners was intended by the Legislature to have the widest range of regulatory power over public utilities. The provisions of Title 48 are to be construed liberally. Deptford Tp. v. Woodbury Ter. Sewerage Corp., 54 N.J. 418, 424 (1969); In re Public Service Electric and Gas Co., 35 N.J. 358, 371 (1961); State v. New York Central R. Co., 52 N.J. Super. 206, 208 (Ch. Div. 1958). The powers delegated by the Legislature to the Board are to be read broadly. Any exception must be carefully circumscribed. Deptford Tp. v. Woodbury Ter. Sewerage Corp., supra, 54 N.J. at 426. Title 48 reflects a legislative recognition that "public interest in proper regulation of public utilities transcends municipal or county lines, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities throughout the State." In re Public Service Electric and Gas Co., supra, 35 N.J. at 371. See also Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971).
Plaintiff relies on In re Glen Rock, 25 N.J. 241 (1957). In that case a municipality supplying water beyond its own boundaries was found not to be a "corporation" within the meaning of N.J.S.A. 48:2-13. The court held that the Board of Public Utility Commissioners did not have jurisdiction over the municipality's water rates. The viability of this case has been eroded by In re Complaint by Morris Tp., 49 N.J. 194 (1967).
In Morris Tp. a municipality supplying water to areas beyond its municipal boundaries was held to be subject to the rate-making jurisdiction of the Board. Justice Francis said:
In our judgment a strong case exists for broad control over the rates of a municipal utility where service is furnished beyond the corporate limits. A municipality which sells water outside its own boundaries engages in a private or proprietary enterprise. If the users in the adjoining municipality were being served by a privately owned utility, obviously the rates would be subject to regulation by the Board of Public Utility Commissioners. Logic compels the conclusion that the *313 Legislature would not intentionally protect such consumers against arbitrary or unreasonable charges of a private utility and leave them without equal protection against discriminatory rates of a municipal utility. * * * [49 N.J. at 205]
While the court carefully limited its holding to municipalities supplying water utilities beyond its boundaries pursuant to N.J.S.A. 40:62-49(f), we think the same logic applies in this case. Plaintiff services not only municipalities within its boundaries, but private scavengers and private residents. If the private scavengers and residents were to utilize a "public utility" land fill site owned and operated by other than a political subdivision of the State, the rates charged them would be subject to regulation by the Board. The fact that a county owned land fill site is used should not deprive the public of the protection provided by the Board's regulatory powers. To hold otherwise would undermine the Board's ability to fulfill its duty as charged by the Legislature of "setting forth and enforcing standards and rates for regulating economic aspects of solid waste collection, disposal and utilization service * * *." N.J.S.A. 48:13A-2. Under the circumstances here, we hold that the County, operating and managing its land fill sites, is a "public utility" subject to the rate regulatory powers of the Board.
Our view is supported by the recent Supreme Court holding, Ringlieb v. Parsippany-Troy Hills Tp., supra, that the Legislature has preempted the field of solid waste, disposal and management by the enactment of N.J.S.A. 48:13A-1 et seq. and N.J.S.A. 13:1E-1 et seq.

C
On appeal from the denial of the motion to dissolve the restraints imposed on it, the Board argues that it has the power to suspend the proposed rate increases pending a hearing before it.
N.J.S.A. 48:2-21 governs rates generally. N.J.S.A. 48:2-21(d) provides in part:
*314 The board, pending such hearing and determination, may order the suspension of the increase, change or alteration until the board shall have approved the same, not exceeding 4 months.
The County argues that the Board does not have the power to suspend because of N.J.S.A. 48:13A-7. That provision states:
a. The board, upon complaint or its own initiative, after hearing, may direct any person engaging in the solid waste collection business or the solid waste disposal business to furnish proof that the charges or rates to be received for such service do not exceed just and reasonable rates or charges for such service.
b. Should the board find that the rates or charges are excessive then it may order the person charging such excessive rates or charges to make an adjustment in the contract to a sum which shall result in just and reasonable rates or charges.
We do not read this statute to be a limitation upon the powers of the Board. N.J.S.A. 48:13A-13 directs:
Nothing contained herein shall be construed to be in derogation of any other right, duty, power or authority granted to the board by the provisions of Title 48 of the Revised Statutes.
Since we have held that under the circumstances of this case the County is a "public utility" within the meaning of Title 48, the Board has the power to suspend the announced increases.
The Board further argues that the Law Division did not have jurisdiction to award the relief sought since plaintiff should have applied for interim relief to the Appellate Division in its appeal from the order of the Board. We find it unnecessary to consider this issue.
The determination of the Board of Public Utility Commissioners is affirmed. The order of the Law Division is reversed and the temporary restraints are dissolved. The County is directed to rebate the amounts collected held in the escrow account.
The matter is remanded to the Board for further proceedings.