142 N.J. Super. 531 (1976)
362 A.2d 70
HENRY J. DAALEMAN, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF ELIZABETHTOWN GAS COMPANY CONSUMERS, PLAINTIFFS,
v.
ELIZABETHTOWN GAS COMPANY, AND THE NEW JERSEY BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 24, 1976.
*532 Messrs. O'Brien, Daaleman & Liotta, attorneys for plaintiff Henry J. Daaleman, individually and as representative of a class of Elizabethtown Gas Company Consumers (Mr. Henry J. Daaleman on the brief).
*533 Mr. Russell Fleming, Jr., attorney for defendant Elizabeth Gas Company (Mr. Fleming, of Counsel and on the brief; Mr. James Bayard Smith on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for defendant Board of Public Utility Commissioners (Mr. Lewis Goldshore, Deputy Attorney General, of counsel and on the brief).
DI BUONO, A.J.S.C.
In this class action composed of consumers who are supplied gas by defendant Elizabethtown Gas Company, it is alleged that Elizabethtown fraudulently manipulated the purchased gas adjustment (PGA) clause, an accounting device designed to transfer the increased costs of purchasing and storing natural and synthetic gas directly to the retail consumer. The complaint further asserts that Elizabethtown, through such manipulation, supplied false tariff submissions to the Board of Public Utilities Commissioners (P.U.C.), misstating both the cost of the gas as well as the quantity of gas purchased, in order to overstate the actual cost of gas per unit. It is contended that this deliberately inflated figure was incorporated directly into the bill charged to each consumer. The claim for relief is predicated on the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., whereby treble damages are sought, together with attorney's fees and costs. Plaintiffs also request that Elizabethtown be permanently enjoined from including the PGA clause as an element in the billing of consumers, and finally that the court direct defendant P.U.C. to conduct a detailed review and examination of Elizabethtown's rate structure, including a complete audit of the utility's financial condition.
On motion plaintiffs demand that Elizabethtown show cause why it should not be preliminarily enjoined from incorporating a PGA rate factor in its future billing to customers. On the return date of the motion defendants moved to dismiss the complaint. The grounds urged by Elizabethtown include failure to state a claim upon which relief *534 can be granted under the Consumer Fraud Act, and the failure of plaintiffs to exhaust their administrative remedies before the P.U.C. Alternatively, Elizabethtown urges that the doctrine of primary jurisdiction should be applied to this case and that the court refer the complaint to the P.U.C. for further action.
The Attorney General, who represents P.U.C. in this action, takes the position that the Consumer Fraud Act does apply to the facts presented in this case. However, the Attorney General does adopt the alternate theories urged by Elizabethtown, and requests the court refer this matter to P.U.C. for further proceedings.
N.J.S.A. 56:8-2 states in pertinent part:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
The legislative intent in enacting the Consumer Fraud Act was examined in Kugler v. Romain, 58 N.J. 522 (1971). There the court stated:
The purpose to be gleaned from the statute specifically involved here * * * is that while private rights and interests were to be served, public interests of substantial consumer groups were likewise to be protected. It has been amply demonstrated that the strongest case for relief from form contract oppression and deceptive and fraudulent misrepresentations is presented by the poor, the naive and the uneducated consumers who have yielded unwittingly to such high pressure sales tactics. The Legislature has decreed that they are a class of persons to whom the courts should give special protection. [at 538]
The essence of the Consumer Fraud Act is the recognition by the Legislature that unfair commercial practices in the area of mass consumer transactions cannot be remedied *535 by traditional private actions. In order to adequately protect the public from such abuses the Legislature has created a public remedy in those areas where the law previously afforded only private redress. Id. at 537. Furthermore, this statute is directed at products and services sold to consumers in the popular sense. The legislative language throughout the statute and the evils sought to be eliminated point to an intent to protect the consumer in the context of the ordinary meaning of that term in the market place. Neveroski v. Blair, 141 N.J. Super. 365 (App. Div. 1976).
The Legislature has entrusted the general supervision, regulation and control over all public utilities to the Board of Public Utilities Commissions, N.J.S.A. 48:2-13. The Board may investigate upon its own initiative or upon complaint in writing any matter concerning any public utility, N.J.S.A. 48:2-19(a), require public utilities to furnish periodically a detailed report of finances and operations, N.J.S.A. 48:2-16, subd. 2(b), and issue orders directing public utilities to comply with the laws of this State, N.J.S.A. 48:2-16, subd. 1(a).
In construing N.J.S.A. 48:1-1 et seq., our courts uniformly hold that the Legislature intended that the Board of Public Utilities Commissioners have the widest range of regulatory power over public utilities. The provisions of this title are to be construed liberally, and the powers delegated by the Legislature to the Board are to be read broadly. In re Petition of South Lakewood Water Co., 61 N.J. 230 (1972); Deptford Tp. v. Woodbury Ter. Sewerage Corp., 54 N.J. 418 (1969); Bergen Cty. v. Dept. of Pub. Util. of N.J., 117 N.J. Super. 304 (App. Div. 1971). At the core of this regulatory scheme is a legislative recognition that the interest of the general public in the proper regulation of those industries classified as public utilities transcends the relatively parochial interests of any subdivision of the public, and that a centralized control must be entrusted to an agency whose continually developing expertise will assure uniformly safe, proper and adequate service by utilities *536 throughout the State. Cf. Bergen Cty., supra at 312, citing In re Public Service Elec. and Gas Co., 35 N.J. 358, 371 (1961).
Turning again to the Consumer Fraud Act, it is significant to note that the remedies afforded to a successful plaintiff include the award of treble damages, attorney's fees, costs and equitable relief. N.J.S.A. 56:8-3.1, 8-8, 8-19. These remedies are clearly intended not only to compensate a plaintiff for his actual losses, but to punish a defendant who has violated the Consumer Fraud Act as well as to deter him from further violations. This rationale, which is consistent with the intent of the Legislature when applied to defendants who operate wholly in the private sector, cf. Kugler v. Romaine, supra, becomes counterproductive when applied to public utilities. Because of the complete integration of the rate structure approved by the P.U.C., N.J.S.A. 48:2-21, with the general financial structure of the regulated utility, any award in excess of actual damages to the utility's consumers would probably be reflected in increased rates charged to that same group. More importantly, the existence of a well-established forum wherein plaintiffs may obtain redress for any excess charges paid to a public utility militates against the assertion that the Consumer Fraud Act applies to public utilities. The Legislature, in enacting the Consumer Fraud Act, intended to provide a public remedy in areas of mass consumer transactions where none had previously existed. Kugler v. Romaine, supra. There is no indication that the Legislature intended to provide an alternate forum and additional remedies to a consumer who, as in the present factual context, has adequate administrative recourse to the P.U.C. coupled with a right to judicial review thereafter. R. 2:2-3(a) (2). The complaint, for the reasons stated above, is therefore dismissed.
It should be emphasized that in dismissing the complaint the court makes no determination concerning the merits of plaintiffs' allegations of fraudulent conduct on *537 the part of Elizabethtown. The dismissal is without prejudice, and plaintiffs may pursue their administrative remedy before the P.U.C. pursuant to N.J.S.A. 48:2-19(a).