248 N.J. Super. 684 (1991)
591 A.2d 1040
ROBERT J. DEL TUFO, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF,
v.
NATIONAL REPUBLICAN SENATORIAL COMMITTEE; REPUBLICAN PRESIDENTIAL TASK FORCE AND AFT CORP., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Essex County.
Decided March 26, 1991.
*685 Cindy K. Miller, Deputy Attorney General, for plaintiff, Robert J. Del Tufo, Attorney General of New Jersey (Robert J. Del Tufo, Attorney General of New Jersey, Jack M. Sabatino, Assistant Attorney General, of counsel; John T. Ambrosio, Deputy Attorney General and Cindy K. Miller, on the brief).
Thomas W. Kerby admitted pro hac vice (Wiley, Rein & Fielding, attorneys, Washington, D.C.); Mary E. Tracey for defendants, National Republican Senatorial Committee; Republican Presidential Task Force (Shanley & Fisher, attorneys).
Genevieve K. LaRobardier for defendant, AFT Corporation (Hannoch Weisman, attorneys).
KIMMELMAN, J.S.C.
Application is made by the Attorney General for preliminary injunctive relief to enjoin the National Republican Senatorial Committee and the Republican Presidential Task Force (both hereinafter referred to as the "NRSC") from engaging in a particularized solicitation of political funds from New Jersey *686 residents. It is asserted that the specific fund raising plan utilized, the details of which will be hereinafter described, runs afoul of the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("Act").
The NRSC opposes the request for preliminary relief and moves to dismiss the complaint contending that the regulation of solicitations by national political parties in connection with federal elections is exclusively entrusted to the Federal Election Commission, and is thereby preempted from state regulation by the Federal Election Campaign Act, 2 U.S.C. § 431 et seq. Alternatively, the NRSC urges that the Consumer Fraud Act is oriented solely toward commercial activity involving consumers and should not be broadened to apply to political fund raising.
Factually, the Attorney General maintains that the fund raising scheme hereunder attack involves ordinary marketing conduct employing promotional materials mailed to almost 68,000 New Jersey residents. The materials are alleged to have the capacity to mislead or deceive the recipients. Each targeted resident received a three page letter describing the purpose of the solicitation, a two page brochure describing the planned publication of a volume entitled "Who's Who in the Republican Party" and a genuine check for $25.00, payable, on terms, to the recipient. A novel method of making political contributions was proposed whereby $12.50 would be electronically transferred each month automatically from the donor's bank account to the NRSC and the name of the agreeable donor would be listed in the "Who's Who" publication. The agreement would be based upon NRSC's representation that a two month test period could be conducted at absolutely no cost to the recipient: the proceeds of the $25.00 check being intended to cover the first two months of the monthly $12.50 automatic electronic fund transfer. The authorization initiating such transactions would be the endorsement and deposit of the $25.00 check by the recipient. At the end of the initial two month period, but before the start of the third month, the arrangement could be terminated thereby saving the donor any out-of-pocket cost *687 since the proceeds from the $25.00 check would equal the contributions made during the test period.
Details of the plan were set forth on the reverse side of the $25.00 check below the space provided for the recipient's endorsement as follows:
I authorize the Republican Presidential Task Force to Charge my account $12.50 each month in accordance with the terms and conditions stated below.
The Republican Presidential Task Force has advanced me money to try candidate escrow funding for two months. I understand that I may cancel the authorization to charge my account at any time after the initial two months by simply calling the task force at 1-800-877-6772 or by giving my bank notice of termination of this authorization pursuant to the requirements of the electronic fund transfer act.
A record of each debit will be included in my monthly bank summary and that record will serve as my receipt. I may contact the Republican Presidential Task Force regarding any dispute and the Task Force unconditionally guarantees that all refunds requested will be immediately honored.
The endorsing recipient would thus become a donor of his or her own funds if the plan was allowed to continue without cancellation for three or more months.
The Attorney General argues that:
(1) this fund raising scheme was designed to prey upon party loyalty and thereby mislead recipients into automatically opening their bank accounts indefinitely to the Republican party; and,
(2) it was wrongful not to inform the potential donors that substantial bank fees would be incurred, if and when, they chose to cease the monthly electronic transfers, and therefore, since their participation was not risk or cost free, the failure to so inform potential recipients constituted a violation of the Act.
The issues presented here would not only generate but merit lively and even heated discussion and debate in another forum, however it is not necessary for this Court to decide whether the political fundraising by national political parties is preempted from state regulation by the Federal Election Campaign Act, *688 supra, or whether the NRSC's present fund raising scheme is fraudulent or otherwise misleading and deceptive.[1]
Recognizing the Consumer Fraud Act as remedial legislation and affording it, as the Court must, a liberal construction in favor of protecting the public, Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69, 494 A.2d 804 (1985), the Court's view is that the reach of the Act is intended to encompass only consumer oriented commercial transactions involving the marketing and sale of merchandise or services. The Act directs its focus at products and services sold to consumers in the ordinary sense and the legislative language evinces an intent to protect a person who is a "consumer" in the ordinary meaning of that term as understood in the marketplace. Daaleman v. Elizabethtown Gas Co., 142 N.J. Super. 531, 535, 362 A.2d 70 (L.Div. 1976) modified 150 N.J. Super. 78, 374 A.2d 1237 (App.Div. 1977) rev'd on other grounds 77 N.J. 267, 390 A.2d 566 (1978); Cf. Neveroski v. Blair, 141 N.J. Super. 365, 358 A.2d 473 (App.Div. 1976). The Act's thrust is pointed toward products and services sold or made available to consumers in the popular sense, and, in such popular and commonly accepted sense, consumers are regarded as those who both use and consume economic goods and services. City Check Cashing, Inc. v. The National State Bank, 244 N.J. Super. 304, 582 A.2d 809 (App.Div. 1990).
*689 By way of clear distinction, the raising of funds for political purposes, whether at the national or local level, involves neither commercial goods nor commercial services. In essence, said activity involves the promotion and marketing of concepts dealing primarily with societal ideas, principles, standards and goals in the administration of government, coupled with the support of candidates with the personality, integrity and fortitude necessary to promote, establish and advance such objectives. It should be obvious that those who are solicited for political contributions are not being approached in their commonly accepted capacity as consumers.
Significantly, N.J.S.A. 56:8-2 relied upon as authority to maintain this action, applies to unconscionable practices and deception in the commercial world "in connection with the sale or advertisement of any merchandise or real estate...." (emphasis supplied). Here, potential political contributors are approached, not in a commercial sense as would be in connection with the sale or advertisement of any merchandise or real estate, but very pointedly with the purpose and intent to obtain funds to promote a political party, its policies and its candidates. Additionally, in this case, the use by the NRSC of an appeal to one's vanity by the inclusion of the contributor's name in a publication to be entitled "Who's Who in the Republican Party" does not convert the political solicitation into the commercial practice contemplated by N.J.S.A. 56:8-2.
The foregoing analysis reflects the Court's perception of the legislative intent as gleaned from the purpose of the Act and from the language used. It would be arbitrary for this Court to expand the scope of the statute beyond the plainly expressed legislative intent. This Court's duty is to reasonably interpret the statute. The Court may not redress a supposed wrong by judicial legislation thereby expanding the definition of commercial practices relating to consumer merchandise to include political solicitations. See Dixon v. Gassert, 26 N.J. 1, 138 A.2d 14 (1958). That task is the province of the Legislature.
*690 The Order to Show Cause will be discharged and the complaint will be dismissed.
NOTES
[1] While not essential to this decision, the following should be noted: Although the solicitation of political contributions is a form of speech which generally is protected by the First Amendment, Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), that protection is not so broad as to insulate the political fundraiser who utilizes deceptive or misleading conduct. Under the cloak of First Amendment protection, a person may not commit frauds upon the public. The State has a compelling interest in protecting the public from fraudulent practices, even where the purpose underlying those fraudulent practices is protected by the First Amendment. Cantwell v. Connecticut, 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1939). See also, Caucus Distributors, Inc. v. State of Alaska, 793 P.2d 1048 (Alaska 1990) and Caucus Distributors, Inc. v. Maryland Securities Commission, 577 A.2d 783 (Md. 1990).