NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 16-4388

———————————

JOHN KENNY,
Appellant

v.

ONWARD SEARCH; TANDEMSEVEN

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-15-cv-00456)
District Judge: Honorable Jose L. Linares

———————————

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2017

Before: AMBRO, KRAUSE, Circuit Judges, and CONTI✦, Chief District Judge

(Opinion filed: November 3, 2017)

———————————

✦ Honorable Chief Judge Joy Flowers Conti, District Court Judge for the Western District
of Pennsylvania, sitting by designation.

—————————

OPINION[*]

—————————

AMBRO, Circuit Judge

John Kenny appeals the District Court's entry of summary judgment in favor of Onward Search ("Onward") and TandemSeven ("Tandem") on claims tied to Kenny's communications with them about a potential contract job. For the reasons that follow, we affirm.

Kenny is a user experience ("UX") professional with approximately 16 years' experience in this field. For about 10 years he worked as an independent contractor on short-term assignments. As an independent contractor, Kenny used staffing agencies to seek job placements. In each placement, he would sign a written agreement, forwarded by the agency, detailing the terms of the contract with the agency's client.

During this time, Kenny also held two separate full-time positions. In November 2013, Prudential hired him as a full-time employee. About five months later, in May 2014, it began assigning some of his projects to a third-party consulting firm. Kenny became dissatisfied with his job and began searching for a new professional opportunity.

While still employed at Prudential, Kenny met Justin Court, a Senior Account Executive at Onward, a staffing company that connects professionals with clients in various fields, including UX. Court sent Kenny an email about a potential freelance

—————————————————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

position, and the two then communicated over email about the assignment and Kenny's hourly rate. In August 2014, an account manager at Onward who also had spoken with Kenny referred him to a recruiter at Tandem, a UX company. A few weeks later, in early September 2014, Court informed Kenny that Tandem was interested in interviewing him for a position.

Three telephone interviews followed, each with a different Tandem representative. Kenny testified that he was not offered the freelance assignment during any of these interviews. He then had an in-person interview with Tandem at its New York City office. During the interview, Tandem representatives laid out the scope of the potential project. They did not discuss "specifics" regarding the assignment other than there would be long hours in the beginning of the project that would include a lot of information gathering, the assignment would be seven months and possibly longer, and Kenny would need to be in Jersey City, New Jersey. He was not offered the freelance position during the in-person interview.

Kenny and Court then spoke twice as Kenny was driving home. In the first conversation, Kenny asked if Court could be allowed to accept the offer on Kenny's behalf. In the second conversation, Court advised Kenny that Tandem was interested and had asked when he could start. Court also told Kenny he had done well in the interview and that Court had never had a candidate hired this quickly. He stated that he was putting Kenny in for his requested hourly rate and that he would get the paperwork to Kenny in a few days. Court never explicitly told Kenny that he had been "accepted" for the

assignment, nor did Court provide Kenny with a start date or any specific details on the length of the assignment or agreed compensation.

Shortly after Kenny returned from his interview, he received an email from Court stating that placement was subject to financial approval and that this approval "ha[d] to come first." J.A. 185-86. Court recommended that Kenny continue to hold off giving his resignation notice to Prudential. Kenny acknowledged, via email, that he agreed with Court's advice and asked how long it would take "to get the budget approval." *Id.* He also acknowledged that he needed to "tread cautiously" and referred to a prior negative experience of leaving a full-time job for a consulting assignment that was reduced from a year to less than a month in length after the project had its budget cut. *Id.*

In a response email the same day, Court wrote that "[t]he money is there, just needs to be approved." *Id.* at 187. He also provided the name of a contact at Tandem, Jessica George, and offered to connect the two so Kenny would be "fully aware of what's going on" and feel "as comfortable as possible." *Id.* at 185. Less than an hour later, Court forwarded an email from George requesting that Kenny "put together a bio[.]" *Id.* at 191. Kenny never followed up with George and never submitted the requested bio. He also never received any confirmation of the project's approval.

Kenny testified that he expected to receive a written agreement from Onward, but before receiving any such agreement or confirmation paperwork he resigned from his job at Prudential. He left his resignation letter on the desk of a Prudential manager who was on vacation. The next day, Court left him a voicemail advising him that Tandem could not offer the position because the project was for one of Tandem's clients, and the client

4

no longer believed it was in its best interest to invest additional resources in the project. Kenny never attempted to rescind his resignation before the manager returned.

Court continued to help Kenny look for other placements and, six weeks after Kenny's separation from Prudential, Kenny began work as a freelance contractor for Grey Healthcare Group. He received and signed an offer letter from the company that contained the duration of the assignment, compensation, and other essential terms. Thereafter he worked again with Prudential as an independent contractor.

Kenny filed his complaint against Onward and Tandem in New Jersey state court in December 2011, asserting five counts. Both later removed the case to federal court and moved to dismiss. The District Court granted the motion to dismiss Count II, which asserted a breach of the implied covenant of good faith and fair dealing, and Count V, which claimed Onward violated the New Jersey Consumer Fraud Act ("CFA"), N.J.A.C. §§ 56:8-1-56:8-206. The Court denied the motion to dismiss Kenny's claims for breach of contract, negligent misrepresentation, and promissory estoppel.

After discovery, Onward and Tandem moved for summary judgment on the remaining claims, and, in November of 2016, the District Court granted their motion. Kenny appeals this order as well as the order dismissing his claims under Count V at the motion-to-dismiss stage.

We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's entry of summary judgment and order granting the motion to dismiss is plenary. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009); *Turner v. Schering-Plough Corp.,* 901 F.2d 335, 340 (3d Cir. 1990). In reviewing the District

5

Court's order granting the motion to dismiss, we accept as true Kenny's factual allegations and draw reasonable inferences in his favor. *See Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We agree with the District Court that Kenny's claims under Count V do not meet this standard.

We will affirm a grant of summary judgment only when there are no genuine issues of material fact and, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *See Turner,* 901 F.2d at 340; Fed. R. Civ. P. 56(c). On review, we agree with the District Court that Onward and Tandem are entitled to summary judgment on the breach-of-contract, negligent misrepresentation, and promissory estoppel claims. We review each of these claims in turn.

Kenny claims that Onward and Tandem breached an employment contract. A plaintiff bringing an action for breach of contract under New Jersey law must demonstrate that the parties entered into a valid contract, the defendant failed to perform its obligations under the contract, and the plaintiff sustained damages as a result. *Murphy v. Implicito,* 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). A contract results from an offer, which "is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it[,]" *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,

6

250 (3d Cir. 2007) (quoting Restatement (Second) of Contracts § 24 (Am. Law Inst. 1981)), and an acceptance, which must be "unqualified" and provide "the manifestation of assent[,]" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quoting *Johnson & Johnson v. Charmley Drug Co.*, 95 A.2d 391, 397 (N.J. 1953)).

We agree with the District Court's finding that there is no material dispute whether the parties formed a valid contract. Neither Onward nor Tandem ever made an offer of employment. Indeed, Court, the Onward employee on whose communication Kenny most relies, explicitly told Kenny in emails that the position was subject to financial approval and counseled him not to resign from his position with Prudential before receiving word of this approval. Kenny testified that he received and understood Court's emails and that he never received a communication that financial approval had been given. This admission belies any claim that an offer was made.

Moreover, the terms of a contract must be "sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert*, 608 A.2d at 284 (internal citations omitted). Here there is no evidence in the record that the parties agreed on essential terms regarding the start date of any potential assignment, the duration of the assignment, or the compensation.

Because the facts, even when viewed in the light most favorable to Kenny, cannot establish that a valid contract existed, the District Court correctly held that Onward and Tandem are entitled to summary judgment as a matter of law on Kenny's breach-of-contract claim.

7

Kenny also cannot survive summary judgment on his claim of negligent misrepresentation, which requires a plaintiff to "establish that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his reliance caused a loss or injury." *Masone v. Levine*, 887 A.2d 1191, 1195 (N.J. Super. Ct. App. Div. 2005). Neither Onward (through Court) nor Tandem (through its employees) made a false statement to Kenny that he had a formal offer for the position. While Kenny directs us to his telephone conversations with Court on his way home from the interview as evidence of his claims to the contrary, it is undisputed that Court told Kenny that placement in the freelance position was subject to financial approval, and that the "approval has to come first." J.A. 187. Moreover, at the time Court forwarded Kenny an email about providing a bio to Tandem, and subsequent to this email, no one at either company stated that financial approval was granted.

We also agree with the District Court that Kenny cannot establish that he justifiably relied on any statement. Kenny worked almost exclusively as a freelance contractor. His experience alerted him that financial approval could alter the potential position. And Court advised him that Tandem needed financial approval before it could extend him an offer of employment. Moreover, Kenny never submitted the requested bio, nor did he take Court up on his offer to call a representative at Tandem to get further details about the status of the project. *Id.* at 101. Under these circumstances, it would not have been reasonable for Kenny to believe that he had been offered a formal position with Tandem, nor would it have been reasonable for him to quit his job at Prudential in reliance on his communications with the representatives at each company.

8

The District Court also properly granted summary judgment on Kenny's promissory estoppel claim. Under New Jersey law, "*the sine qua non*" of a promissory estoppel claim is a "clear and definite promise." *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat. Bank*, 395 A.2d at 222, 230 (N.J. Super. App. Div. 1978). We agree with the District Court that Kenny cannot establish this element because Court informed him that any employment opportunity was subject to financial approval and that he should wait for the approval before resigning from Prudential. Because no one at either Tandem or Onward ever conveyed such an approval to Kenny, the communications with Court do not qualify as a "clear and definite promise" of future employment.

Finally, we agree with the District Court's Rule 12(b)(6) dismissal of Kenny's claim brought under the CFA. Among other things, it requires unlawful conduct by the defendant, defined as a "misrepresentation in connection with the sale of merchandise or services[.]" *Castro v. NYT Television*, 851 A.2d 88, 96 (N.J. Super. Ct. App. Div. 2004). The CFA directs its focus at products and services sold to consumers in the ordinary sense, and "consumer" has the ordinary meaning of that term in the marketplace. *Del Tufo v. Nat'l Republican Senatorial Comm.*, 591 A.2d 1040, 1042 (N.J. Super. Ct. Ch. Div. 1991). If the alleged misrepresentation is not made in the context of inducing a sale, the CFA does not apply. *See Castro*, 851 A.2d at 95–96. Onward was not inducing Kenny to buy a product or services, and Kenny was not acting as a consumer. Instead, Kenny in the Amended Complaint alleged that Tandem, not Kenny, would compensate Onward for facilitating any employment contract.

9

\* \* \* \* \*

Accordingly, we affirm the District Court's judgment in favor of Onward and Tandem.