**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2532
_____

HECTOR L. HUERTAS,
Appellant

v.

GALAXY ASSET MANAGEMENT, f/k/a Galaxy Asset
Purchasing;
CAPITAL MANAGEMENT SERVICES, L.P.;
ASSET MANAGEMENT PROFESSIONALS, LLC;
EXPERIAN INFORMATION SOLUTIONS;
TRANSUNION, LLC; APPLIED CARD BANK, f/k/a Cross
Country Bank
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 09-cv-02604)
District Judge:  Honorable Robert B. Kugler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2011

Before: BARRY, JORDAN and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed April 11, 2011)
_____

Hector L. Huertas
2205 Sewell Street
P.O. Box 448
Camden, NJ 08101
        <u>Appearing Pro Se</u>

William J. Martin, Esq.
Martin, Gunn & Martin, P.A.
216 Haddon Avenue, Suite 420
Westmont, NJ 08108
        Counsel for Appellee Asset Management
Professionals, LLC

James W. Gicking, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin, PC
1845 Walnut Street
Philadelphia, PA 19103
        Counsel for Appellee Applied Card Bank

_____

OPINION OF THE COURT
_____

PER CURIAM.

Hector Huertas appeals pro se from the District Court's dismissal of his claims against Asset Management Professionals ("AMP") and Applied Card Bank f/k/a Cross Country Bank ("ACB").[1] For the following reasons, we will affirm.

I.

In addition to AMP and ACB, Huertas brought this lawsuit against four other defendants – Galaxy Asset Management f/k/a Galaxy Asset purchasing ("Galaxy"); Capital Management Services, L.P.; Experian Information Solutions; and TransUnion, LLC. Huertas incurred credit card debt owed to ACB, which sold the debt obligation to Galaxy, which ultimately retained AMP to collect on the debt. Huertas's claims are primarily based upon ACB's transfer of, and AMP's attempts to collect, a "false" debt, i.e., a debt

_____

[1] ACB changed its name to Applied Bank; however, we will use ACB for ease of reference.

2

upon which the six-year statute of limitations had run under New Jersey law.[2]  Specifically, Huertas alleged that AMP violated the Fair Debt Collection Practices Act ("FDCPA") by sending him a letter in February 2009 in an attempt to collect on the time-barred debt, and violated the Fair Credit Reporting Act ("FCRA") by acquiring his credit information from TransUnion in connection with its improper debt collection efforts.  Huertas also alleged that both ACB and AMP breached their duties of good faith and fair dealing, violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1 to -20, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

AMP and ACB moved to dismiss the claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Huertas responded with a "Motion for Judgment on the Pleadings and for Sanctions In Response to Defendant's Applied Bank and Asset Management Professionals Motions to Dismiss."  The District Court granted AMP's and ACB's motions and denied Huertas's motion.  The District Court reasoned that expiration of the statute of limitations makes a debt unenforceable, but does not extinguish the debt itself, such that neither ACB's assignment of Huertas's debt nor AMP's attempt to collect on the debt violated the law or breached any duty.

Despite having rejected Huertas's claims to the extent that they were based on a time-barred debt, the District Court

---

[2]  The complaint also alleged that the statute of limitations had expired under Pennsylvania law, presumably because ACB's predecessor was a Pennsylvania Corporation. See 42 Pa. Cons. Stat. Ann. § 5525 (four year statute of limitations).  However, since Huertas lives in New Jersey, brought his state claims under New Jersey law, repeatedly refers to New Jersey's six-year statute of limitations, see N.J. Stat. Ann. § 2A:14-1, and was contacted by AMP at his New Jersey address, we will assume that New Jersey's statute of limitations applies.  The complaint suggests that Huertas had incurred the debt by 2001.

recognized that Huertas's filings indicated that he had previously filed for bankruptcy. Since it was unclear to the District Court whether Huertas was alleging that the defendants had attempted to collect a debt extinguished by bankruptcy proceedings, the District Court allowed Huertas to amend his complaint to assert such a theory.

Huertas did not file an amended complaint within the time period prescribed by the District Court. Instead, he dismissed his claims against the remaining defendants, and timely appealed to this Court. On appeal, Huertas explained that he did not amend his complaint because his debt had not, in fact, been discharged in bankruptcy.

II.

The District Court's jurisdiction arose under 28 U.S.C. §§ 1331 & 1367. Our jurisdiction is based on 28 U.S.C. § 1291.[3] Our review of the District Court's decision to grant AMP and ACB's motions to dismiss is plenary. Grier v. Klem, 591 F.3d 672, 676 (3d Cir. 2010). "[W]e accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them, and we affirm the order of dismissal only if the pleading does not plausibly suggest an entitlement to relief." Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 242 (3d Cir. 2008). We may also consider documents attached to the complaint. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Furthermore, we must

---

[3] Huertas's failure to amend his complaint in the time frame allotted by the District Court reflects his intention to stand on his complaint, which renders the District Court's order final as to ACB and AMP for purposes of § 1291. See Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 n.5 (3d Cir. 1992). Furthermore, his appeal is timely because the District Court's order granting the motions to dismiss was not appealable until the claims against all defendants were resolved. See DeJohn v. Temple Univ., 537 F.3d 301, 306-07 (3d Cir. 2008).

4

construe Huertas's complaint liberally because he is proceeding pro se. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The same standard of review applies to a motion for judgment on the pleadings. Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir. 2002).

III.

A.    Validity of the Debt

Huertas's primary contention on appeal is that the District Court erred in concluding that the expiration of the statute of limitations did not extinguish his debt. We agree with the District Court, however, that, under New Jersey law, Huertas's debt obligation is not extinguished by the expiration of the statute of limitations, even though the debt is ultimately unenforceable in a court of law.[4] See R.A.C. v. P.J.S., Jr., 927 A.2d 97, 106 (N.J. 2007) ("When a procedural statute of limitations runs its course, only the remedy is barred, not the common law right."); Hollings v. Hollings, 73 A.2d 755, 757 (N.J. Super. Ct. Ch. Div. 1950) (observing that a statute of limitations "is a bar to the remedy only, and does not extinguish, or even impair, the obligation of the debtor"), aff'd, 78 A.2d 919 (N.J. Super. Ct. App. Div. 1951). In other words, Huertas still owes the debt – it is not extinguished as a matter of law – but he has a complete legal defense against having to pay it. Having reached that conclusion, we agree with the District Court that Huertas has failed to state claims against AMP and ACB for the reasons below.

_____

[4] The authorities upon which Huertas relies, Davis v. Mills, 194 U.S. 451 (1904), and Sebring Associates v. Coyle, 790 A.2d 225 (N.J. Super. Ct. App. Div. 2002), are not to the contrary. Davis does not govern how New Jersey treats a time-barred debt under state law and concerned the running of the statute of limitations on a statutory cause of action as opposed to a common law obligation. Sebring concerned how a time-barred loan owed to the bank should be treated as between a partnership and a partner who had defaulted on the loan.

5

B.    FDCPA claim

Huertas's FDCPA claim against AMP turns on whether a debt collector may attempt to collect upon a time-barred debt without violating the statute.  The FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including falsely representing "the character, amount, or legal status of any debt," id. § 1692e(2)(A).  The FDCPA also prohibits debt collectors from using unfair or unconscionable means of collecting a debt.  Id. § 1692f.

Although our Court has not yet addressed the issue, the majority of courts have held that when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts.  Compare Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid."), Wallace v. Capital One Bank, 168 F. Supp. 2d 526, 527-29 (D. Md. 2001) (debt validation notices that were silent as to whether debt was time barred and which did not threaten collection action did not violate FDCPA), and Shorty v. Capital One Bank, 90 F. Supp. 2d 1330, 1331-33 (D.N.M. 2000) (sending of debt validation notice regarding time-barred debt did not violate the FDCPA), with Larsen v. JBC Legal Grp., P.C., 533 F. Supp. 2d 290, 302-03 (E.D.N.Y. 2008) (threatening legal action on time-barred debt violated FDCPA), Beattie v. D.M. Collections, Inc., 754 F. Supp. 383, 393 (D. Del. 1991) ("[T]he threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate."), and Kimber v. Fed. Fin. Corp., 668 F. Supp.

6

1480, 1487 (M.D. Ala. 1987) ("[A] debt collector's filing of a lawsuit on a debt that appears to be time-barred, without the debt collector having first determined after a reasonable inquiry that that limitations period has been or should be tolled, is an unfair and unconscionable means of collecting the debt."). We agree with the logic underlying those decisions and conclude that Huertas's FDCPA claim hinges on whether AMP's February 11, 2009, letter threatened litigation.

Whether a debt collector's communications threaten litigation in a manner that violates the FDCPA depends on the language of the letter, which "should be analyzed from the perspective of the 'least sophisticated debtor.'"[5] Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting Wilson, 225 F.3d at 354). AMP's letter indicates that Huertas's account has been reassigned, requests that Huertas call "to resolve this issue," includes a privacy notice informing him that Galaxy would be accessing his private consumer information, and, as required by 15 U.S.C. § 1692g(a), indicates that, if Huertas does not dispute the debt within thirty days of receiving the letter, AMP will assume the debt is valid. (App. 33.) At the bottom, the letter states, in bold, capital letters, "**THIS IS AN ATTEMPT TO COLLECT A DEBT**." (Id.)

Even the least sophisticated consumer would not understand AMP's letter to explicitly or implicitly threaten litigation. Furthermore, the FDCPA requires debt collectors to inform a debtor "that the debt collector is attempting to collect a debt." 15 U.S.C. § 1692e(11). Since it is appropriate for a debt collector to request voluntary repayment of a time-barred debt, see Freyermuth, 248 F.3d at 771, it would be unfair if debt collectors were found to violate

---

[5] In this Circuit, such an analysis is appropriately undertaken on a Rule 12(b)(6) motion, see Wilson v. Quadramed Corp., 225 F.3d 350, 353 n.2 (3d Cir. 2000), or a motion for judgment on the pleadings, see Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008).

the FDCPA both if they include the mandated language (because inclusion would threaten suit) and if they do not (because failure to include a mandatory notice violates the statute). Accordingly, Huertas has not stated a claim under the FDCPA based upon AMP's letter, and we will affirm the District Court's dismissal of that claim.[6] See Walker v. Cash Flow Consultants, Inc., 200 F.R.D. 613, 615-16 (N.D. Ill. 2001) (following Freyermuth and granting motion to dismiss when the complaint did not allege that debt collector implicitly or explicitly threatened litigation and claim was based solely on the fact that debt collector sent collection letter after limitations period expired).

C.    FCRA claim

Huertas's FCRA claim asserts that AMP obtained his credit report from TransUnion, a credit reporting agency, "without any FCRA-sanctioned purpose." (App. 12.) The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA. 15 U.S.C. §§ 1681b(f), 1681n(a). However, the statute expressly permits distribution of a consumer report to an entity that "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."[7] Id. § 1681b(a)(3)(A) (emphasis added). Huertas

---

[6] In his complaint, Huertas also alleged that AMP's failure to "reinvestigate" the debt violated the FDCPA. However, he appears to have abandoned that claim since he did not clarify or even mention it in his briefing before the District Court or this Court.

[7] Huertas's assertion that § 1681b(a)(3)(A) only permits the use of consumer information in connection with an extension of credit is premised on a misreading of the provision, which, when read properly, clearly authorizes use of a consumer report (1) "in connection with a credit transaction involving the consumer on whom the information is to be furnished," and (2) involving either (a) the extension

8

sought credit from ACB, which he received, and accumulated credit card debt. It was that consumer transaction which ultimately resulted in AMP's accessing of Huertas's credit report to collect on his delinquent accounts. Section 1681b(a)(3)(A) authorizes the use of consumer information under such circumstances. See Phillips v. Grendahl, 312 F.3d 357, 366 (8th Cir. 2002), abrogated on other grounds, Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007); see also Stergiopoulous v. First Midwest Bancorp, Inc., 427 F.3d 1043, 1046-47 (7th Cir. 2005).

In his brief, Huertas points out that the FCRA prohibits a consumer reporting agency from making a consumer report containing "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years," measured from 180 days after the account is placed in collection or charged off by the creditor. 15 U.S.C. § 1681c(a)(4), (c)(1). Even if we were to consider this argument, which was not raised before the District Court, it is TransUnion, the consumer reporting agency, and not AMP, that created the consumer report of which Huertas complains. Accordingly, even assuming that this provision of the FCRA was violated, Huertas cannot state a claim against AMP on that basis. See D'Angelo v. Wilmington Med. Ctr., Inc., 515 F. Supp. 1250, 1253 (D. Del. 1981) (collection agency that provided information to consumer reporting agency regarding a debt was not a consumer reporting agency under the FCRA). Furthermore, Huertas cannot base his claim on 15 U.S.C. § 1681s-2(a)(1)(A), because no private right of action exists under that provision. See 15 U.S.C. § 1681s-2(c), (d); Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). Accordingly, we will affirm the District Court's dismissal of Huertas's FCRA claim against AMP.

---

of credit to that consumer, or (b) "review or collection" of the consumer's account.

9

D.    Remaining claims

We will also affirm the dismissal of Huertas's RICO and state law claims against AMP and ACB.  Huertas has failed to state a claim under the NJCFA because his complaint is not based on AMP or ACB's marketing or sale of merchandise or services to him.  See Del Tufo v. Nat'l Republican Senatorial Comm., 591 A.2d 1040, 1042 (N.J. Super. Ct. Ch. Div. 1991) ("[T]he reach of the [NJCFA] is intended to encompass only consumer oriented commercial transactions involving the marketing and sale of merchandise or services."); see also J&R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259, 1272-73 (3d Cir. 1994).  Instead, he seeks to recover for ACB's transfer of his debt to third parties and AMP's attempts to collect the account – actions that do not fall within the NJCFA.  Cf. Joe Hand Promotions, Inc. v. Mills, 567 F. Supp. 2d 719, 723-24 (D.N.J. 2008) (holding that letter from attorney fraudulently accusing plaintiff of violating defendant's exclusive licensing rights was not actionable under the NJCFA because letter did not involve a sale of merchandise).  Huertas's CFA claims also fail because the fact that defendants sought payment on a valid, even if unenforceable, debt does not equate to fraud absent allegations indicating that they made false or misleading representations.  See N.J. Stat. Ann. § 56:8-2.

Finally, we fail to see how AMP's attempts to collect on a time-barred debt or ACB's transfer of that debt to a third party violates RICO or breaches the duty of good faith and fair dealing.  See 18 U.S.C. §§ 1962(c) (prohibiting "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"), 1961(1) (defining "racketeering activity" as certain criminal activity), 1961(6) (defining "unlawful debt" as a debt incurred in connection with gambling activity or which is usurious); see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 396 (N.J. 2005) ("The party claiming a breach of the covenant of

10

good faith and fair dealing must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.") (quotations omitted). Although Huertas may have had a credit card contract with ACB, he has not alleged facts that would support a conclusion that he was deprived of the benefit of his bargain under that contract. See Seidenberg v. Summit Bank, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002) ("The guiding principle in the application of the implied covenant of good faith and fair dealing emanates from the fundamental notion that a party to a contract may not unreasonably frustrate its purpose.")

Accordingly, we will affirm the dismissal of the remaining claims against ACB and AMP.

IV.

In sum, we will affirm the District Court's dismissal of Huertas's claims against AMP and ACB and its denial of Huertas's motion for judgment on the pleadings.

Huertas also filed a motion for leave to file the second volume of the joint appendix under seal. Although it would have been preferable for Huertas to file a redacted appendix for the public file and provide an unredacted version for the Court, we recognize that Huertas is proceeding pro se and will grant the motion to seal because the second volume of the joint appendix contains personal identifying information, including Huertas's social security number and bank accounts. See 3d Cir. LAR 113.12.

11