**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2918
_____

JOSEPH WATSON,
                                    Appellant

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS; GERALD
ROZUM, Supt. Somerset, PA; GIBSON, Deputy Superintendent; PAUL FISHER,
Former Kitchen Food Sevice Mananger; REAM, Kitchen Supervisor; PASUKA,
Captain; CLASS, Major; SNYDER, Security Lieutenant; DUPONT, Hearing Examiner;
JECHONECH; VERNEAU, Kitchen cook; PRATTS, Correction Security Officer;
TROY, Correction Security Officer

*(Pursuant to Rule 43(c) Fed.R.App.P.)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3-09-cv-00087)
District Judge:  Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 8, 2011

Before:  AMBRO, HARDIMAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  July 11, 2011)
_____

OPINION
_____

PER CURIAM

Joseph Watson appeals from an order dismissing his complaint. For the following reasons, we will affirm in part, vacate in part, and remand for further proceedings.

I.

Watson, a prisoner at SCI-Somerset in Pennsylvania during the period in question,[1] filed this pro se 42 U.S.C. § 1983 action in April 2009, requesting declaratory and monetary relief. He claimed as follows:[2] beginning in 2006, he and other unspecified black inmates that worked in the prison kitchen were specifically targeted for invasive strip searches by kitchen staff, one of whom—defendant Verneau—is alleged to have actively and repeatedly molested and sexually harassed Watson during the searches. Watson filed many grievances during this period, in response to which defendant Fisher (the kitchen manager) called Watson into his office, personally apologized, and asked that Watson withdraw his complaint.

Following this intervention, the situation briefly improved, but in 2007 the searches resumed. Having been told of Watson's complaints, Verneau allegedly intensified the harassment. Watson soon learned that other inmates were having similar

---

[1] As of his Notice of Appeal, Watson was incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan. See Notice, ECF No. 57. However, Pennsylvania's inmate tracker suggests that he is once again housed at SCI-Somerset as of June 7, 2011.

[2] We recount a distilled version of the facts as stated in Watson's complaint and the documents attached thereto, as we are required to accept Watson's allegations as true. See Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam). Unsurprisingly, the Commonwealth vigorously disputes Watson's factual recitation, accusing him of fabricating details and concocting statements to support his accusations of retaliation and conspiracy. See, e.g., Br. for Appellees 17 n.7.

problems with abusive searches. He obtained "sworn affidavits" from these inmates, intending to use the documents in crafting a criminal complaint against Verneau and his associates. Around this time, Watson received a "misconduct" from Verneau for stealing sugar packets from the kitchen, an event Watson described as being yet another aspect of the ongoing "revenge conspiracy" against him.

Watson then let slip to defendants Fisher and Ream (another kitchen supervisor) that he was preparing a criminal complaint, as he had found the internal prison-grievance system to be ineffectual. They "tr[ied] to talk [him] out of pursuing criminal charges," but to no avail. In response, defendants Fisher, Glass (major of the guards), and Papuga (captain of the guards) sent Pratts and Troy (two guards) to Watson's cell with the purpose of confiscating all evidence against the kitchen staff members, which included the aforementioned "sworn affidavits" and a half-typed criminal complaint, both of which were later destroyed by defendant Security Lieutenant Snyder.[3] Watson was charged with misconduct, was put in pre-hearing confinement in the Restricted Housing Unit (RHU), and was then partially convicted of the charge at a hearing he describes as faulty and lacking due process.

After he was secured in the RHU, Watson alleged, a "witch-hunt" began, and the

---

[3] The misconduct reports and other documents issued in the wake of the search make no mention of any affidavits, and instead cite Watson for possessing, inter alia, an illegal petition and "contraband UCC" material. Again, however, this is not the proper juncture for us to resolve factual disputes among the parties.

3

inmates who had submitted affidavits regarding the kitchen incidents—some of whom had signed their real names—were sent to other institutions, leaving them unavailable for the purposes of replacing the destroyed affidavits or corroborating Watson's allegations. Watson further charged that his outgoing and incoming mail (including legal mail) was tampered with during his stay in the RHU, forcing him to "fish" mail to neighboring inmates; as a consequence, several legal proceedings he had commenced were dismissed for failure to prosecute.

The defendants moved to dismiss Watson's complaint, asserting: his failure to state a claim upon which relief could be granted; his failure to plead personal involvement for defendants Beard, Rozum, Gibson, and Dupont; and his failure to exhaust administrative remedies. They incorporated a complete record of Watson's grievances into their motion.

By Report and Recommendation issued April 12, 2010, Magistrate Judge Lisa Pupo Lenihan determined that Watson had failed to state any substantive constitutional claim upon which relief could be granted. Watson v. Beard, No. 09-87J, 2010 U.S. Dist. LEXIS 52877, at *12–36 (W.D. Pa. Apr. 12, 2010). While briefly discussing the necessity of exhausting prison grievance procedures under the Prison Litigation Reform Act (PLRA), Magistrate Judge Lenihan declined to base her decision on that ground. See id. at *10. The District Court adopted the Report and Recommendation over Watson's objections, dismissing his complaint. Watson v. Beard, No. 09-87J, 2010 U.S. Dist. LEXIS 52881, at *2 (W.D. Pa. May 27, 2010). Watson filed a timely notice of appeal.

4

II.

We have jurisdiction under 28 U.S.C. § 1291, and conduct plenary review of the District Court's order dismissing the complaint, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in Watson's favor. Huertas v. Galaxy Asset Mgmt., ___ F.3d ___, 2011 U.S. App. LEXIS 7397, at *4 (3d Cir. Apr. 11, 2011, No. 10-2532). As Watson proceeds pro se, we must construe his claims liberally. Id. at *5. Our review extends to the complaint itself, exhibits attached to the complaint, matters of public record, and "undisputedly authentic document[s] that a defendant attaches as . . . exhibit[s] to a motion to dismiss if the plaintiff's claims are based on th[ose] document[s]." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1939 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

III.

A) Supervisory Liability and Official Capacities

The District Court discussed, but did not resolve, the issue of whether the § 1983 claims against defendants Beard, Rozum, Gibson, and Dupont failed as a matter of law, due to the lack of personal involvement by those parties. See Evancho v. Fisher, 423

5

F.3d 347, 353 (3d Cir. 2005).[4]

With regard to defendant Dupont, Watson asserts that his disciplinary hearing was faulty. However, no hearing was even required, as he does not claim that the conditions in the RHU imposed on him an "atypical and significant hardship." Cf. Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (discussing the standard for a prisoner's liberty interest). Watson also alleges that Dupont was involved in a conspiracy to violate his rights, but he did not sufficiently develop this charge; indeed, the "conspiracy" claims regarding defendant Dupont seem to be part and parcel of Watson's claim of unfairness in his disciplinary hearing. Iqbal, 129 S. Ct. at 1950.

With regard to defendants Gibson, Rozum, and Beard, Watson alleges little beyond pure supervisory liability, although he does suggest that Gibson began an investigation that came to a conclusion adverse to what Watson would prefer. According to Watson, Gibson was receptive to his complaints, spoke with the parties, found the explanations proffered to be satisfactory, and—in Watson's words—"condoned plaintiff being violated like this and told the violators they can continue to violate the inmates." Compl. Supp. 11, ECF No. 4. Such an outcome is not enough to demonstrate Gibson's "acquiescence" in a constitutional violation. Evancho, 423 F.3d at 353. Accordingly,

---

[4] Watson sued Gibson, Rozum, and Beard in their "individual and [o]fficial" capacities. It is clear that all § 1983 claims against the above-named defendants in their official capacities must be dismissed under the principles of sovereign immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007).

6

Watson failed to state a viable § 1983 claim against Gibson, Rozum, Beard, and Dupont.

B) Eighth and Fourteenth Amendment Claims

To the extent that Watson alleged violations of either the Eighth and Fourteenth Amendments, we agree with the District Court that he has failed to state a claim, and affirm for substantially the same reasons addressed in its opinion. Watson did, in a cursory fashion, imply the broader existence of a policy targeting African American prisoners, but failed to show that he was treated differently than other individuals similarly situated. See Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992).

Watson claims that defendant Troy "defamed" him by falsifying various reports, focusing on Troy's failure to reveal that affidavits from fellow inmates were among the "contraband" confiscated from his cell during the objected-to search. Defamation can implicate due process, and thus be actionable under § 1983, when it accompanies the alteration or extinguishment of a right or status previously recognized by state law. See Paul v. Davis, 424 U.S. 693, 711 (1976). But this "stigma-plus" test still requires a demonstration of injury to reputation. See Dee v. Borough of Dunmore, 549 F.3d 225, 233–34 (3d Cir. 2008). As Watson has failed to demonstrate an injury to his reputation deriving from the proceeding in question, and as Watson's confinement to the RHU was not obtained in violation of due process, he cannot demonstrate a prima facie entitlement to relief under a § 1983 theory of defamation.

Finally, if Watson's complaint were construed as challenging the destruction of his

7

personal property by prison officials, and in particular by defendant Snyder, he failed to state a claim because an unauthorized deprivation of property by prison officials is not contrary to due process if a meaningful post-deprivation remedy for the loss exists. Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Such a remedy existed; indeed, Watson took advantage of it. He therefore cannot maintain a due-process claim on this theory.

C) First Amendment Claims

Watson alleged violations of his rights under the First Amendment, claiming that various defendants retaliated against him and, later, interfered with his access to the courts by tampering with his legal mail.

In order to facially state a retaliation claim, a prisoner must demonstrate (1) constitutionally protected conduct, (2) sufficiently adverse action by prison officials, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). The District Court interpreted Watson's claim as addressing only the "retaliatory" misconduct report filed in the aftermath of the search of his cell, holding that the claim failed the third prong. Specifically, the District Court determined that the disciplinary committee's finding of guilt demonstrated that Watson would have suffered the same punishment for possession of contraband even without having filed grievances. Watson, 2010 U.S. Dist. LEXIS 52877, at *15–16; see also Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (establishing "burden shifting" test for rebutting an inmate's claim of retaliatory

8

causality).

As a preliminary matter, we observe that our precedential cases dealing with the burden-shifting analysis generally arise from orders granting summary judgment, not orders dismissing complaints for failure to state a claim. See, e.g., Carter v. McGrady, 292 F.3d 152, 153 (3d Cir. 2002); Rauser, 241 F.3d at 331. To find that the defendants have, at this stage of the litigation, "rebutted" Watson's prima facie claim would be to subject the veracity of his allegations to premature judicial testing, at odds with our obligation to assume the truth of his factual proffer.

Second, we read Watson's retaliation claim as sweeping more broadly. His complaint appears to allege that a wide variety of mistreatment, from the intensified strip-search regimen, to the searches of his cell, to the tampering with his legal mail, all resulted from his filing of grievances and his threats to report prison misconduct. This would appear to state a claim under Rauser, and should hence have survived the defendants' motion to dismiss.

Watson also argued that his First Amendment rights were violated when the defendants tampered with his legal mail and interfered with his access to the courts. In order to state such a claim, he must show an actual injury, such as the "loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997). The underlying lost claim, whether past or potential, must be nonfrivolous and arguable, and also must be described in the complaint. Christopher v. Harbury, 536 U.S. 403, 414–5 (2002); see also Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasizing that prisons must provide tools

9

"that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration"). To the extent that he complains of the inability to pursue a past legal claim, he is required to demonstrate that he has "no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe, 536 F.3d at 205 (internal quotations omitted). While Watson does appear to have suffered the dismissal of at least two court actions based on failure to prosecute, he has not adequately pleaded their nature or their likelihood of success. Hence, he has failed to state an access claim. But as we believe that this pleading defect may be cured by granting leave to amend, we will vacate and remand on this ground for that purpose. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

D) Fourth Amendment claims

The District Court held, and the defendants argue vociferously on appeal, that Watson failed to state a Fourth Amendment claim. The District Court specifically observed that inmates "do not have a Fourth Amendment right to be free of strip searches, which can be conducted by officials without probable cause provided that the search is conducted in a reasonable manner." Watson, 2010 U.S. Dist. LEXIS 52877, at *17 (citing Bell v. Wolfish, 441 U.S. 520, 558–59 (1979)). The defendants assert that our recent decision in Florence v. Board of Chosen Freeholders of Burlington, 621 F.3d 296, 311 (3d Cir. 2010), cert. granted, 131 S. Ct. 1816 (2011), where we held blanket

strip-search procedures to be constitutional, mandates an outcome in their favor, as "[t]he purposes of the inmate kitchen worker visual strip search policy are multivalent and reasonably can include maintenance of prison security, as well as preventing food theft[;] it is plainly a reasonable practice viewed in this way." Br. for Appellees 13–14.

Viewed in that way, we would be inclined to agree. But Watson alleges that he received more than the visual strip searches we held to be reasonable in Florence; for example, he claimed that Verneau "squeeze[ed] [his] penis [and] testicles . . . [and] made comments [that] he would enjoy this while reaching around [and] grip[p]ing [his] penis." Compl. Supp. 2. The intrusive and humiliating nature of such a search, conducted on an arbitrary basis, calls into question its reasonableness and, thus, its constitutionality. Cf. Leverette v. Bell, 247 F.3d 160, 166 n.3 (4th Cir. 2001) ("Courts examining the constitutionality of physically intrusive searches have distinguished between strip searches, visual body cavity searches, and manual body cavity searches."). Furthermore, as the Supreme Court observed in Wolfish, "on occasion a security guard may conduct the search in an abusive fashion[;] . . . [s]uch abuse cannot be condoned." 441 U.S. at 560. Since the District Court did not examine the circumstances surrounding the various searches in the light most favorable to Watson, who emphasized that not all searches were merely visual and who described purposeful sexual denigration during some inspections, we will vacate and remand on this ground.

On the separate Fourth Amendment issue of whether the search of Watson's cell was constitutional, we agree with the District Court that "the Fourth Amendment

11

proscription against unreasonable searches does not apply within the confines of the prison cell." Hudson v. Palmer, 468 U.S. 517, 526 (1984).

E)  Conspiracy

Watson alleges that several of the defendants engaged in a retaliatory conspiracy against him. "In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. . . ." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), superseded by statute on other grounds as stated in P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009).

We find Watson's allegations of conspiracy to be conclusory and wanting—he invokes "conspiracy," but fails to plead an actual agreement between the parties. For example, with regard to the retaliatory search of his cell, he describes concerted action against him, but no agreement to violate his rights. See Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (requiring concerted action *and* an agreement to satisfy conspiracy claim). As "the linchpin for conspiracy is agreement," Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992), concerted action, without more, cannot suffice to state a conspiracy claim. Cf. Twombly, 550 U.S. at 553–54. He has also failed to successfully plead a 42 U.S.C. § 1985(3) conspiracy. See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

IV.

In summary, we will affirm the great majority of the District Court's judgment,

12

but will vacate and remand on the retaliation and Fourth Amendment claims as discussed above.[5] We also will vacate and remand on his access-to-the-courts claim, as he may be able to cure the defect in his allegations if granted leave to amend; on all other claims, amendment would be futile. Grayson, 293 F.3d at 111.

---

[5] Of course, we recognize that a great deal of energy was expended below by the parties on the issue of exhaustion. While we may affirm on any ground supported by the record, Fairview Twp. v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985), and while it certainly appears that Watson's utilization of the available grievance process was less than thorough, we will not affirm on that ground because: 1) failure to exhaust, as an affirmative defense, Jones v. Bock, 549 U.S. 199, 216 (2007), is only an appropriate grounds for 12(b)(6) dismissal if the defect is apparent from the face of the complaint, see Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997), and Watson's inclusion of some grievance records in his filing does not imply the exclusion of others; and 2) to the extent that the defendants showed in their motion to dismiss that Watson had, in fact, explicitly failed to exhaust his administrative remedies, he countered that they failed to provide him with the means of appealing his grievances by depriving him of the prison handbook. Since we have previously held that obstacles to grievance exhaustion can, in limited circumstances, mitigate failure to exhaust (see, e.g., Brown v. Croak, 312 F.3d 109, 112–13 (3d Cir. 2002)), we believe that this matter is best considered by the fact-finder in the first instance.