**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2079
_____

MARCUS L. WALLACE,

Appellant

v.

MEDIA NEWS GROUP, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-12-cv-00872)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 12, 2014

Before:  CHAGARES , GARTH and SLOVITER, Circuit Judges

(Opinion filed: June 13, 2014)

_____

OPINION
_____

PER CURIAM

Marcus W. Wallace appeals from the District Court's dismissal of his complaint

against MediaNews Group, Inc. ("MNG").[1]  We will affirm in part, vacate in part, and remand for further proceedings.

I.

Wallace is a pretrial detainee awaiting trial on first-degree murder and other charges in Franklin County, Pennsylvania, for allegedly bludgeoning his mother to death in her home.  Wallace's charges have attracted a great deal of local media attention from various sources, including a newspaper called the Chambersburg Public Opinion ("Public Opinion").  The Public Opinion is owned by MNG, and it has published numerous articles about Wallace's case along with his mug shot.

In a March 10, 2012 article titled "Water boy, you're fired," however, the Public Opinion printed a picture of Wallace's mug shot next to an article about a separate and unrelated first-degree murder charge pending against Jeffrey Miles (the "Miles article"). The article reports that Miles has been accused of stabbing a police informant to death and dumping her body in the woods.  The caption "Miles" appeared underneath Wallace's mug shot, and the article does not otherwise mention Wallace.  The Public Opinion published a correction the next day by printing Miles's actual mug shot.

Wallace filed suit pro se against MNG asserting a number of state-law claims on the basis of the Miles article, including claims for defamation and "false light" invasion of privacy.  On MNG's Rule 12(b)(6) motion, the District Court dismissed Wallace's complaint with prejudice.  The District Court later denied Wallace's motion for

---

[1] The District Court's and this Court's dockets refer to the defendant as "Media News

reconsideration, and Wallace appeals.[2]

II.

Our review of the dismissal of a complaint under Rule 12(b)(6) is plenary. See

Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 31-32 (3d Cir. 2011). "We accept as true

all well-pled factual allegations in the complaint and all reasonable inferences that can be

drawn from them, and we affirm the order of dismissal only if the pleading does not

plausibly suggest an entitlement to relief." Id. at 32 (quotation marks omitted). We must

liberally construe Wallace's pro se complaint, and we may consider the articles attached

to it. See id. Having conducted our review, we agree with the District Court's dismissal

of most of Wallace's claims largely for the reasons it explained. With respect to

Wallace's claims for defamation and "false light" invasion of privacy, however, we will

vacate and remand for further proceedings. Our analysis will focus primarily on the

defamation claim.

The elements of defamation under Pennsylvania law include (1) the defamatory

---

Group, Inc.," while the defendant refers to itself as "MediaNews Group, Inc."
[2] We have jurisdiction under 28 U.S.C. § 1291. The District Court did not expressly address the basis for its jurisdiction, but it wrote that Wallace asserted his claims under 42 U.S.C. § 1983 and its docket identifies the source of its jurisdiction as "federal question." Wallace in fact has not asserted any federal claims, and he amended his complaint to allege diversity of citizenship under 28 U.S.C. § 1332 on the ground that he is a citizen of Pennsylvania and MNG is headquartered in Colorado. After we raised this issue sua sponte, the parties agreed that the District Court had diversity jurisdiction and MNG provided documentation, of which we may take judicial notice, that it is incorporated in Delaware and headquartered in Colorado. Thus, we are satisfied that Wallace and MNG are diverse and that the District Court had jurisdiction under § 1332. See 28 U.S.C. § 1332(c)(1); Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 347 (3d Cir. 2013).

character of the communication, (2) its application to the plaintiff, and (3) the understanding by the recipient of both its defamatory meaning and its application to the plaintiff. See Graboff v. Colleran Firm, 744 F.3d 128, 135 (3d Cir. 2014) (citing, inter alia, 42 Pa. Cons. Stat. § 8343(a)). The District Court did not decide the threshold issue of whether the Miles article is capable of a defamatory meaning, and MNG has not argued that point on appeal. Wallace argues that the Miles article is defamatory because the placement of his photograph in the article implies that he has been charged with the crimes that have been attributed to Miles instead. A false statement that a plaintiff has been charged with a particular crime does appear capable of a defamatory meaning under Pennsylvania law as a general matter. See Brown v. Phila. Tribune Co., 668 A.2d 159, 161 n.2, 163 (Pa. Super. Ct. 1995).

The District Court nevertheless concluded that Wallace failed to state a claim for defamation for two reasons. First, the District Court concluded that the Miles article "cannot be reasonably construed or understood as intended to refer to Wallace" because, although it includes Wallace's photograph, its text refers exclusively to Miles and identifies Miles by name and address. (ECF No. 28 at 7.) The District Court did not cite any authority in support of this ruling, and we believe it premature to resolve this issue as a matter of law at the pleading stage.

The Pennsylvania Supreme Court has long held that "[t]he fact that the plaintiff is not specifically named [in the publication] is not controlling. A party defamed need not be specifically named, if pointed to by description or circumstances tending to identify

him." Schonek v. WJAC, Inc., 258 A.2d 504, 507 (Pa. 1969) (quotation marks omitted).

Neither the parties nor the District Court have cited, and we have not located, any

decisions applying Pennsylvania law to the placement of a plaintiff's photograph in an

article regarding another person. We think it self-evident, however, that placement of a

plaintiff's photograph in such an article could constitute a "description or circumstance

identifying" the plaintiff. Indeed, other jurisdictions—including the United States

Supreme Court in a diversity action—have so concluded under facts similar to those

alleged here. See Peck v. Tribune Co., 214 U.S. 185, 189 (1909) (holding that an

advertisement containing the plaintiff's photograph captioned as one of a different

person, and containing only that different person's name and address, was "of and

concerning" the plaintiff because "[m]any might recognize the plaintiff's face without

knowing her name, and those who did know it might be led to infer that she had

sanctioned the publication under an alias"); see also Little Rock Newspapers, Inc. v.

Fitzhugh, 954 S.W.2d 914, 918-19 (Ark. 1997) (collecting similar cases and concluding

that use of plaintiff's picture raised "a question of fact for the jury to resolve"). We

likewise decline to hold as a matter of law that no reasonable person could believe that

the Miles article applies to Wallace even though it contains Wallace's photograph.[3]

---

[3] Neither MNG nor any of the decisions on which it relies acknowledge Peck or this line
of authority, and those decisions are unpersuasive for that reason and others. For
example, MNG relies on Woolf v. Scripps Publishing Co., 172 N.E. 389 (Ohio Ct. App.
1930), which reached the conclusion MNG urges under circumstances similar to those
alleged here. Five years later, however, the Ohio Court of Appeals for a different district
rejected Woolf and reached the opposite conclusion on the basis of Peck. See Petransky
v. Repository Printing Co., 200 N.E. 647, 647-48 (Ohio Ct. App. 1935) (reversing

Second, the District Court noted Wallace's admission in a filing in his criminal case that his reputation already has been damaged by media coverage of his own charges (as discussed in note 7, <u>infra</u>) and concluded that "[o]n [sic] who by his own actions has so badly damaged his reputation cannot be further injured by the allegedly false statement on another matter." (ECF No. 28 at 7.) This reasoning is problematic. In the first place, Wallace stands accused of murder but has not been convicted. Unless he is convicted, it is not fair to say that he has lowered his reputation "by his own actions." In any event, resolution of this issue too is premature at the pleading stage.

In concluding otherwise, the District Court relied solely on one of its unpublished opinions applying the so-called "libel-proof plaintiff" doctrine, which in turn cited our decision in <u>Marcone v. Penthouse International Magazine for Men</u>, 754 F.2d 1072, 1078 (3d Cir. 1985). We see no indication that the Pennsylvania Supreme Court has adopted the libel-proof plaintiff doctrine as a bar to liability, at the pleading stage or otherwise. To the contrary, as we recognized in <u>Marcone</u>, the Pennsylvania Supreme Court appears to treat the issue of a plaintiff's already tarnished reputation as going to damages. <u>See</u> <u>id.</u> at 1079 (holding that "we cannot say as a matter of law that [the plaintiff] was libel proof" because "[e]vidence of a tarnished reputation is admissible and should be considered as a factor to mitigate the level of compensatory damages") (citing <u>Corabi v.</u>

---

dismissal of complaint where defendant published plaintiff's photograph under a different name in a newspaper article reporting that different person's involvement in a crime). We find <u>Petransky</u> more persuasive.

<u>Curtis Publ'g Co.</u>, 273 A.2d 899, 920 (Pa. 1971)).[4]

MNG has not directly defended the District Court's reasoning but has raised a similar point by way of arguing that its publication of Wallace's photograph in the Miles article was not materially false. The falsity of an allegedly defamatory statement "'must go to the gist or sting of the defamation.'" <u>Graboff</u>, 744 F.3d at 136 (quoting <u>Dunlap v. Phila. Newspapers, Inc.</u>, 448 A.2d 6, 15 (Pa. Super. Ct. 1982)). "The test [for falsity] is whether the alleged libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." <u>Dunlap</u>, 448 A.2d at 15 (quotation marks omitted). MNG argues that the only "sting" of the Miles article is the implication that Wallace has been charged with first-degree murder, which he has. MNG further argues that publication of that truth could not produce a "different effect on the mind of the reader" because Wallace himself, in a motion for a change of venue in his

---

[4] In addition to these two points, the District Court wrote that MNG's prompt correction of the article "supports a conclusion that the article using Wallace's mug shot was in error and not done out of malice to Wallace." (ECF No. 28 at 6.) The District Court did not base its ruling on that point or otherwise explain its relevance. Actual malice is required for liability only when the plaintiff is a public figure and the speech relates to matters of public concern, and private figures may seek compensatory damages for defamation under Pennsylvania law and the First Amendment on the basis of mere negligence. <u>See</u> <u>Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.</u>, 923 A.2d 389, 399-400 (Pa. 2007) (citing, inter alia, <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 343 (1974)); <u>U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.</u>, 898 F.2d 914, 923, 929 (3d Cir. 1990). The District Court did not discuss whether Wallace is a public figure but, in light of its reference to malice at the pleading stage, we directed the parties to brief that issue. MNG has declined to do so because, inter alia, Wallace's "status as a public figure does not bear on any ground on which [MNG] moved to dismiss his claims." (Appellee's Br. at 7 n.2.) We will thus not consider the issue further, though we note that, even if MNG's correction "supports a conclusion" that it did not act with malice, it does not provide a basis for dismissing Wallace's complaint at the pleading stage.

criminal case, has admitted that his reputation already has been tarnished by prior press coverage of his charges.[5]

These arguments are not without some appeal, but we ultimately reject them at this stage. Wallace's complaint raises the reasonable inference that the "sting" of the Miles article is more than the mere fact that he faces a charge of first-degree murder. Wallace's charges arise from the beating death of his own mother in her home. Many of the Public Opinion articles about Wallace's case that predated the Miles article mention multiple inquiries into Wallace's mental competence to stand trial, and one of them reports that a psychiatric expert was "asked to provide an opinion as to whether Wallace was suffering from any kind of mental condition . . . at the time of the crime that would have impaired his ability to understand the nature of what he did and the difference between right and wrong." (ECF No. 1 at 50; 23-1 at 26.)[6] The Miles article, by contrast, reports charges of stabbing a police informant to death and dumping her body in the woods. The article makes no reference to Miles's mental health. Thus, as grave as the charges against Wallace are, Wallace's complaint suggests that reasonable members of the public could reach materially different conclusions about such things as his culpability and danger to society at large if they believe that he has been charged with committing the different

---

[5] MNG also argues that the First Amendment requires that Wallace bear the burden of proof on this issue, but it is not necessary to resolve that issue for purposes of this appeal.

[6] Wallace has since been involuntarily committed to a psychiatric facility, and his criminal trial remains on hold. It appears that the Commonwealth recently withdrew its Notice of Aggravating Circumstances, which it previously filed to seek the death penalty.

(and additional) murder attributed to Miles. For that reason, we decline to treat these two alleged murders as interchangeable for reputational purposes at the pleading stage.

The decisions on which MNG relies do not persuade us otherwise. In the most analogous of those decisions, the plaintiff argued that a television series defamed him by identifying him as a member of the Aryan Brotherhood gang because, inter alia, the same television series notified its viewers that Aryan Brotherhood members must commit a murder or attempted murder in order to be inducted. See Bustos v. A & E Television Networks, 646 F.3d 762, 769 (10th Cir. 2011) (applying Colorado law). The court held that the defamatory implication was not materially false because the plaintiff actually had committed a gang-related murder in the past. See id. In that case, however, the allegedly defamatory statement implied the commission only of a generic, unspecified murder and not, as here, a specific murder that differs in various respects from the murder actually charged.

Moreover, Bustos was decided at the summary judgment stage, and the court noted that, although summary judgment was appropriate, "deciding the materiality of a falsehood often requires a jury" because "[w]hether a particular misstatement is likely to injure the plaintiff's reputation in the minds of a reasonable member of the community is often best decided by reasonable members of the community." Id. at 767. We of course express no opinion on whether a trial might ultimately prove necessary in this case, but we think Wallace's allegations in this regard sufficient to survive the pleading stage.[7]

---

[7] MNG relies heavily on the fact that Wallace sought a change of venue in his criminal

Two additional matters require discussion. First, given the similarity between Wallace's claim for defamation and his claim for "false light" invasion of privacy (which similarity MNG emphasizes in its brief), we will remand for further proceedings on that claim as well. See Graboff, 744 F.3d at 137 ("Clearly there is little difference between [defamation and false light] claims in dealing with the consequences of a defendant's statements.").[8]

---

case on the ground that media coverage has caused prospective jurors in Franklin County to form a fixed opinion of his guilt. The District Court too relied on that circumstance and concluded that Wallace's claimed injury in this case is "no different." (ECF No. 28 at 7.) But there is a difference between arguing that press coverage has convinced prospective jurors that Wallace is guilty of the crimes with which he actually has been charged and arguing that a false report that he has been charged with a different murder further diminishes his standing in the community. MNG's argument may well prove persuasive at a later stage of this litigation, but it is not dispositive at the pleading stage.

[8] The District Court (Judge Sylvia Rambo), in her memorandum opinion dated January 18, 2013, included a discussion of the tort claim under the heading "Publicity Placing Person in False Light." Under that discussion at pages 8 and 9 she stated as follows:

> The elements to be proven for this invasion of privacy claim are (1) publicity given to private facts (2) which would be highly offensive to a reasonable person; (3) which are not of legitimate concern to the public and (4) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Rush v. Philadelphia Newspapers, Inc.*, 199 Pa. Super. 141 (1999); *Donnelly v. O'Malley*, 2009 U.S. Dist. LEXIS 92289 (M.D. Pa. 2009); *Larsen v. Philadelphia Newspapers, inc.*, 375 Pa. Super. 66 (1988) (all citations omitted).

> In this case, there was no publicity to private facts in the Miles article regarding Wallace; the Miles article was of legitimate public concern, and there are no facts showing that the publication of Wallace's mug shot in the Miles article was done with reckless disregard. As

Second, after Wallace filed his opening brief on appeal, he filed a motion for appointment of counsel in this Court on the basis of, inter alia, his involuntary commitment. We will deny that motion in light of our disposition and because most of the reasons why Wallace asserts he requires counsel (such as assistance with discovery and trial) are not relevant on appeal. We note, however, that Wallace filed a motion for appointment of counsel with the District Court along with his complaint and that the District Court docket does not reflect a ruling on that motion. (ECF No. 2.) We express no opinion on whether the appointment of counsel may be warranted in the District Court, but the District Court may wish to consider that possibility, particularly in light of concerns regarding Wallace's mental competency. See Powell v. Symons, 680 F.3d 301, 306-08 & n.5 (3d Cir. 2012).

### III.

For the foregoing reasons, we will vacate the District Court's dismissal of Wallace's claims for defamation and "false light" invasion of privacy and remand for further proceedings on those claims. We will otherwise affirm. Wallace's motion for leave to file a brief in support of his motion for appointment counsel and in support of his appeal is granted. Wallace's motion for appointment of counsel in this Court is denied.

---

noted above, the following day, the error was corrected by Defendant. This claim also fails.